UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| R. DANE SHARP, individually and on behalf of all similarly situated employees,  )<br>)<br>Plaintiffs,  )<br>)<br>v.  )<br>)<br>CGG LAND (U.S.) INC.,  )<br>)<br>)<br>Defendant.  ) | Case No. 14-CV-0614-CVE-TLW |

## OPINION AND ORDER

Now before this Court is defendant's motion for summary judgment (Dkt. # 86) and plaintiffs' cross-motion for partial summary judgment (Dkt. # 87). Defendant seeks summary judgment on plaintiffs' claim that defendant improperly calculated plaintiffs' regular rate of pay for purposes of overtime payments under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., arguing that it properly excluded from the regular rate per diem payments it made to plaintiffs for meal expenses incurred while temporarily working at a remote work site. Dkt. 86, at 5. Plaintiffs argue that the per diem amounts must be included in the regular rate calculation. Dkt. # 87, at 8. Plaintiffs also asks the Court to find that defendant has waived any remaining defenses as a matter of law. Id. at 22. Defendant responds that it properly pled its affirmative defenses and thus has not waived them. Dkt. # 89, at 10.

**I.**

Plaintiff R. Dane Sharp worked for defendant, a corporation involved in seismic surveying, as both a truck driver and vibe operator for approximately four years. Dkt. # 1, at 1. Sharp's employment required regular travel to and from remote work sites, and defendant paid for or reimbursed Sharp for his travel and lodging expenses. Dkt. # 16-1, at 2. For every day that Sharp

worked, he received a cash payment of $35.00 in addition to the pay and reimbursement otherwise owed to him. Dkt. # 1, at 3. This payment was referred to as a "hot shot." Id. at 2-3. Sharp received these "hot shot" payments regardless of his position, the number of hours he worked, or whether he incurred additional expenses while working. Dkt. # 16-1, at 2. Numerous other employees who worked under the same circumstances received "hot shot" payments as well. Id.

Sharp and his co-workers regularly worked more than forty hours per week, for which they received overtime pay. Id. at 1. Sharp states that he was "employed and paid as an hourly non exempt [sic] employee for the purpose of overtime compensation." Dkt. # 1, at 2. At some point, Sharp reviewed his payment records and determined that defendant calculated the rate of overtime pay without including the daily "hot shot" payment as part of the regular rate of pay. Dkt. # 16-1, at 2. When he asked co-workers about their regular rate of pay, they reported rates that also did not include the "hot shot" payments. Id. On October 14, 2014, Sharp filed a complaint on behalf of himself and others, alleging that defendant violated 29 U.S.C. § 207(a) by failing to pay the correct rate of overtime pay. Dkt. # 1, at 2. On January 14, 2015, the Court conditionally certified a collective action. Dkt. # 29. This class was defined to include "[a]ll of defendant's current and former hourly non-exempt employees who were entitled to be paid overtime premiums under the FLSA and who received at least one cash 'hot shot' payment in the three years (plus twenty-one days) preceding January 14, 2015." Id. at 14. A total of 226 individuals joined the suit as opt-in plaintiffs following the conditional certification as a collective action. Dkt. # 38-40, 43-45, 50-55. Both sides now move for summary judgment.

**II.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Id. at 327 (quoting FED. R. CIV. P. 1).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law." Id. at 251-52. In its review, the Court

construes the record in the light most favorable to the party opposing summary judgment. <u>Garratt v. Walker</u>, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

### A.

Plaintiffs bring a claim under the FLSA, alleging that defendant failed to pay them the overtime wages they were due because it did not include the "hot shot" payments in the regular rate calculation. Defendant moves for summary judgment on the grounds that the "hot shot" payments were properly excluded from the regular rate calculation for the purposes overtime pay pursuant to 29 U.S.C. § 207(e)(2), because they were reimbursements for travel expenses incurred on behalf of defendant and in furtherance of defendant's interests. Plaintiffs move for partial summary judgment on the ground that defendant improperly excluded the "hot shot" payments from the regular rate because they were not payments for travel expenses incurred for defendant's benefit.

Under the FLSA,

> no employer shall employ any of his employees who . . . is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). Regular rate is defined to include "all remuneration for employment paid to, or on behalf of, the employee," but is subject to enumerated statutory exclusions. <u>Id.</u> § 207(e). Among these exclusions are

> payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; <u>reasonable payments for travel expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable</u>

>  by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment.

Id. § 207(e)(2) (emphasis added). The applicable regulation further expands upon this exclusion, providing that

> [w]here an employee incurs expenses on his employer's behalf or where he is required to expend sums solely by reason of action taken for the convenience of his employer, section 7(e)(2) is applicable to reimbursement for such expenses. Payments made by the employer to cover such expenses are not included in the employee's regular rate (if the amount of the reimbursement reasonably approximates the expenses incurred). Such payment is not compensation for services rendered by the employees during any hours worked in the workweek.

29 C.F.R. § 778.217(a). The critical inquiry here is whether the "hot shot" payments fall within this statutory exclusion. Specifically, the Court must consider whether the payments were "reasonable payments for travel expenses" that were "incurred by an employee in the furtherance of his employer's interests."

As an initial matter, the parties do not dispute that the $35.00 "hot shot" payments constituted a reasonable amount. The parties have stipulated that the $35.00 "hot shot" payments were a reasonable approximation of meal expenses incurred by employees while working at the remote work site. Dkt. # 71, at 3. As such, the question before the Court is whether this amount constituted a "travel expense" that was "incurred by an employee in furtherance of the employer's interests," that is, whether the plaintiffs were "required to expend sums solely by reason of action taken for the convenience of [their] employer." See 29 U.S.C. § 207(e)(2); 29 C.F.R. § 778.217(a).

Plaintiffs assert that the § 207(e)(2) exclusion does not apply because the "hot shot" payments cannot be considered reimbursement for travel expenses. Dkt. # 87, at 14-15. In support of their argument, plaintiffs argue that they performed no work while traveling to the remote work

5

site and only performed work on defendant's behalf after they had arrived.[1] Id. Thus, plaintiffs argue, the "hot shot" payments cannot properly be excluded under § 207(e)(2) because plaintiffs did not incur these expenses while actually in transit. Id. But this is a hyper-literal interpretation of the term "traveling" and plaintiffs provide no applicable authority for such an interpretation.[2] Ample authority, including federal regulations, case law, and Department of Labor (DOL) guidance, support the interpretation that "traveling" is not limited to the moments actually in transit, but include time spent "away from home" on an employer's business. See, e.g., 29 C.F.R. § 778.217(b) (providing examples of reimbursement of expenses that were not part of the regular rate, including "living expenses away from home"); Acton v. City of Columbia, Mo., No. 03-4159-CV-NKL, 2004 WL 2152297, at *6-7 (W.D. Mo. Sept. 10, 2004), aff'd, 436 F.3d 969 (8th Cir. 2006) (holding that payment for meal expenses firefighters incurred while away from home during a 24-hour shift were properly excludable under § 207(e)(2)); U.S. Wage and Hour Division, Dep't of Labor, Opinion

---

[1] In its reply to plaintiffs' motion, defendant disputes that the plaintiffs performed no work while in transit to the remote work site and only performed work on defendant's behalf after they arrived. Dkt. # 89, at 1. Although the parties dispute these facts, they do not create a genuine dispute of material facts that would render summary judgment inappropriate. See Farthing v. City of Shawnee, Kan., 39 F. 3d 1131, 1134-35 (10th Cir. 1994) ("A 'material' fact is one 'that might affect the outcome of the suit under the governing law,' and a 'genuine' issue is one where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986))). Because plaintiffs' argument fails as a matter of law, any factual dispute would not "affect the outcome of the suit." See id.

[2] The only authority plaintiffs identify in support of this argument is the Portal-to-Portal Act, 29 U.S.C. § 254(a), which dictates that traveling to or from the actual place of performance of principal work activity is not considered work and is not compensable. Dkt. # 87, at 15. But this Act is inapplicable the situation before the Court, where an employee is required to incur travel expenses or temporary home-to-work expenses "because the employee, on a particular occasion, is required to report for work at a place other than his regular workplace." See 29 C.F.R. § 778.217(b)(5).

Letter FLSA 2004-3 dated May 13, 2004, 2004 WL 2146923 (explaining that § 207(e)(2) allows the exclusion from the regular rate "living expenses while away from home"). The Court concludes that the "hot shot payments" were reasonable payments for travel expenses and now considers whether the plaintiffs incurred them in furtherance of defendant's interests.

Although the Tenth Circuit has not directly addressed the issue, other courts have considered whether per diem payments compensating employees for expenses incurred while traveling on behalf of an employer are properly excludable from the regular rate. In Berry v. Excel Group, Inc., 288 F.3d 252 (5th Cir. 2002), the Fifth Circuit considered whether an employer's weekly payment of $150 per diem to an employee who lived 100 miles away from the employer's temporary work site could be excluded from the regular rate pursuant to 29 U.S.C. § 207(e)(2). The court held that the per diem was properly excluded from the regular rate because it constituted a reasonable reimbursement of travel expenses that the employee incurred for the employer's benefit. Id. at 254. The court further explained that, even if the employee did not commute to the work site each day, and instead stayed temporarily near the work site, the per diem would still be a reasonable reimbursement for living expenses incurred for the employer's benefit and convenience. Id. And, in Acton, the court held that a $14 meal reimbursement for each 24-hour shift a firefighter worked was properly excluded from the regular rate. 2004 WL 2152297, at *6-7. The court determined that the critical question was whether the payment of such a meal allowance was primarily for the employer's or employees' benefit. Id. at *6. Finding that the firefighters were "away from home" for the duration of a 24-hour shift inherently for the convenience of the city, the court held that the meal payments fell within the § 207(e)(2) exclusion because the employees incurred meal expenses for the benefit of the employer. Id. at *7.

These cases support the conclusion that defendant properly excluded the "hot shot" per diem payments from the regular rate calculation. Like the employees in these cases, plaintiffs performed work away from home for the benefit of their employer. They traveled to the remote work site exclusively to perform work for defendant and were thus away from home inherently for the convenience of defendant. Meal expenses plaintiffs incurred were therefore for the benefit of defendant and in furtherance of defendant's interests. The "hot shot" payments are similar to the properly excluded reimbursements for expenses the employees in these cases incurred while temporarily working away from home on the employer's behalf.

Plaintiffs identify several cases which they contend support their position that defendant improperly excluded the "hot shot" payments from the regular rate calculation. However, none of these cases is binding precedent, and each is distinguishable. Plaintiffs first identify Newman v. Advanced Technology Innovation Corp., 749 F.3d 33 (1st Cir. 2014), where the court held that an employer's per diem payments could not be excluded from the regular rate because the amount of per diem an employee received depended upon the number of hours the employee worked in a week. Id. at 38-39. As plaintiffs make no allegation that defendant tied the amount of the "hot shot" payments to the number of hours worked and the stipulated undisputed fact is that the per diem remained a constant $35.00, this case is inapposite. Plaintiffs next argue that the Fifth Circuit's holding that per diem should be included in the regular rate in Gagnon v. United Technisource Inc., 607 F.3d 1036 (5th Cir. 2010), requires the Court to reach the same result here. This case, like Newman, considered only whether a per diem payment should be excluded from the regular rate when the amount varied based on the number of hours an employee worked. Id. at 1041-42. Again, plaintiffs make no such allegation against defendant, rendering this case similarly inapposite.

Plaintiffs also cite Wang v. Chinese Daily News, Inc., 435 F. Supp. 2d 1042 (C.D. Cal. 2006), vacated, 132 S. Ct. 74 (2011). Even considering this vacated case for its persuasive value, it has little. See State v. Shalala, 42 F.3d 595, 599 n.5 (10th Cir. 1994) (considering the persuasive value of a vacated opinion). The court in Wang concluded that a daily meal allowance an employer paid its employees should be included in the regular rate because the employer failed to provide evidence that the employees incurred the expenses for the employer's benefit. 435 F. Supp. 2d at 1058. This is distinct from the question before the Court because Wang considers the burden of proof on a defendant arguing that a payment falls within a regular-rate exclusion. See id. Here, defendant provides sufficient evidence to support its argument that the "hot shot" payments were properly excludable under 29 U.S.C. § 207(e)(2).

Finally, plaintiffs argue that Hanson v. Camin Cargo Control, Inc., No. H-13-0027, 2015 WL 1737394 (S.D. Tex. Apr. 16, 2015), supports the conclusion that the "hot shot" payments should be included in the regular rate. In Hanson, the court held that car allowances, meal payments, and offshore duty pay should be included in the regular rate for employees who worked temporarily off site for an oil inspection company. Id. at *3-5. The court determined that the offshore duty payments should be included in the regular rate because they were more analogous to a "shift differential" than a reimbursement for expenses incurred by employees while temporarily working away from home on behalf of the employer. Id. Specifically regarding the meal allowance, the court further found that it was not excludable from the regular rate because its value was determined by the number of hours an employee worked and it was not a reasonable approximation of the expenses actually incurred by the employee. Id. at*5. Here, the "hot shot" payments were reimbursements for travel expenses, were a reasonable approximation of the expenses incurred, and

9

the amount did not vary based on the number of hours worked. These cases, as well as a litany of other cases[3] plaintiffs contend demonstrate payments for expenses should be included in the regular rate calculation, do not support the conclusion that defendant improperly excluded the "hot shot" payments from the regular rate calculation.

Guidance from the DOL further supports defendant's position that it properly excluded the "hot shot" payments. Although not binding authority on this Court, these materials are persuasive authority that the Court may consider in resolving this issue. See Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944) ("[T]he rulings, interpretations and opinions of the [agency], while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."); Chavez v. City of Albuquerque, 630 F.3d 1300, 1308 (10th Cir. 2011) ("The rulings, interpretations, and opinions of DOL, while not controlling, are entitled to the level of deference announced in Skidmore v. Swift & Co.[.]").

In the DOL Field Operations Handbook, the DOL espouses the position that expenses incurred for meals while traveling are for the benefit of the employer: "Meals furnished by the employer are regarded as primarily for the benefit and convenience of the employee. This rule does not apply, however, to the meal expenses incurred by an employee while traveling away from home on the employer's business." Dept. Labor Field Operations Handbook § 30c03. And a DOL Opinion Letter specifically addresses whether payments for meal expenses while traveling fall

---

[3] Plaintiffs' motion cites ten additional cases as illustrative of payments or benefits that are not excludable from the regular rate. Dkt. # 87, at 20-21. As none of these cases involves payments for expenses incurred while traveling on the employer's business or reimbursement for meal expenses, they are inapposite to the issue before the Court and require no further analysis.

within the § 207(e)(2) exclusion. <u>Opinion Letter FLSA 2004-3 dated May 13, 2004</u>, 2004 WL 2146923. Considering a situation in which an employer required its employees to frequently travel out of town for work and reimbursed employees for travel expenses including meals, the DOL opined that:

> In this situation, the regulation allows an exclusion from the regular rate for transportation, travel expenses and "*living expenses away from home*." Certainly the phrase "living expenses" includes the cost of food, and the necessity of eating meals away from home is an additional expense that the employee incurs for the employer's benefit. Thus [the employer] may properly reimburse employees for the cost of their meals while traveling for work, and exclude this payment from employees' regular rate of pay.

<u>Id.</u>

This guidance from the DOL indicates that it clearly views meal expenses incurred while temporarily working away from home as distinct from those incurred while working at a permanent location and acknowledges that expenses incurred while temporarily away from home are for the benefit of the employer. Plaintiffs' argument that meal expenses are always incurred for the benefit of the employee fails to consider this critical distinction. <u>See</u> Dkt. # 87, at 17.

Based on the foregoing case law and DOL guidance, the Court concludes that defendant properly excluded the "hot shot" payments from the regular rate calculation pursuant to 29 U.S.C. § 207(e)(2). Plaintiffs were traveling away from home and performing work for defendant. Their meal expenses were thus incurred on behalf of the defendant and in furtherance of its interests. Summary judgment should be granted in favor of defendant on this issue.

**B.**

Plaintiffs also ask the Court to find that defendant has, as a matter of law, waived all defenses other the § 207(e)(2) regular-rate exclusion at issue in this opinion. Dkt. # 87, at 22. Specifically,

plaintiffs assert that defendant did not adequately raise any additional defenses in its pleadings or discovery responses, particularly identifying the Motor Carrier Act exemption (MCAE) as improperly raised. Id.

The Federal Rules of Civil Procedure require a party responding to a pleading to "state in short and plain terms its defenses to each claim asserted against it" and to "affirmatively state any avoidance or affirmative defense . . . ." FED. R. CIV. P. 8(b), (c). The Tenth Circuit has not determined whether the notice pleading standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and its progeny apply to affirmative defenses. One commentator has noted that "numerous federal courts have held [that] an affirmative defense may be pleaded in general terms and will be held to be sufficient, and therefore invulnerable to a motion to strike, as long as it gives the plaintiff fair notice of the nature of the defense." 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1274. Other courts of appeals have determined that general statements of affirmative defenses are sufficient. E.g., Holway v. Negro Leagues Baseball Museum, 263 F. App'x 538, 538 (8th Cir. 2008) (unpublished per curiam) (holding that defendant did not waive its statute of limitations defense by failing to cite the specific statute in its answer); Clem v. Corbeau, 98 F. App'x 197, 203 (4th Cir. 2004) (unpublished per curiam) (holding that defendant's answer sufficiently encapsulated the elements of an affirmative defense to have put plaintiff on notice that defendant intended to rely on it); Williams v. Ashland Eng'g Co., 45 F.3d 588, 593 (1st Cir. 1995) (holding that a party did not waive its preemption defense where its answer did not specifically mention preemption but contained a broader defense that was capable of encompassing preemption), abrogated on other grounds by Carpenters Local Union No. 26 v. U.S. Fid. & Guar. Co., 215 F.3d 136 (1st Cir. 2000).

The reason defendants are required to plead affirmative defense is to avoid unfair surprise to the plaintiff. See Rogers v. McDorman, 521 F.3d 381, 385 (5th Cir. 2008) ("The concern is that '[a] defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense.'" (quoting Ingraham v. United States, 808 F.2d 1075, 1079 (5th Cir. 1987)) (alteration in original)). In most cases, recitation of the specific affirmative defenses that may be applicable is sufficient to serve this purpose because the nature of the defense may be inferred from the factual allegations already made in the complaint and answer.

Defendant's answer specifically identifies the FLSA exemptions as affirmative defenses to plaintiffs' claim. Dkt. # 20, at 3-5. Defendant's recitation of the specific affirmative defenses is sufficient to preserve its defenses because the nature of the defense may be inferred from the factual allegations already made in the complaint and answer. As it relates to the MCAE defense, sufficient factual basis exists in the complaint and answer, including information regarding Sharp's employment as a truck driver and vibe operator, to give fair notice that defendant intended to rely on this defense. As to any argument that defendant waived any affirmative defenses relating to FLSA exemptions by stipulating that plaintiffs in this action are non-exempt employees, such a concession has no bearing on the procedural question of waiver. The Court thus concludes that defendant properly pled its affirmative defenses and has not waived them as a matter of law. Plaintiff's motion for summary judgment on this issue should be denied.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment (Dkt. # 86) is **granted** and plaintiffs' cross-motion for partial summary judgment (Dkt. # 87) is **denied**.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report no later than **October 26, 2015**, as to what issues remain for adjudication.

**DATED** this 19th day of October, 2015.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE